CITY AND COUNTY OF HONOLULU, a municipal
corporation, Plaintiff-Appellant, *v.*
BONDED INVESTMENT COMPANY, LTD.;
MOKULEIA RANCH AND LAND COMPANY,
LIMITED; JOE LYNN HAYES; FRANK EDMOND
NYMAN; CHARLES WARREN TRYCK; and
JAMES WAH YOU WONG, Defendants-Appellees.

No. 5268

June 15, 1973

Richardson, C.J., Marumoto, Abe,
Levinson and Kobayashi, JJ.

OPINION OF THE COURT BY ABE, J.

On May 23, 1969, the City and County of Honolulu, hereafter called the City, commenced eminent domain proceedings against the owners for the acquisition of Lot 65 of the Maili Beach Lots, shown on Map 3 of the Land Court Application 1827. Thereafter, on August 3, 1970, the City commenced another proceeding to acquire Lots 59 and 60. Lot 65 contains 54,102 square feet and adjoins Lot 59. Lots 59 and 60 are contiguous lots and contain a combined area of 57,855 square feet. Both proceedings were consolidated for trial. The jury awarded the owners $259,289.37 for Lot 65, together with $20,000 for severance damages, or the total sum of $279,289.37 and for Lots 59 and 60, $250,000. Judgments were entered accordingly and the City appealed.

## I.

On the first issue as to the rate of interest the owners are entitled to for blight of summons damages, we reiterate that the owners are entitled to 5 percent per annum as we stated in *City and County of Honolulu* v. *Bonded Investment Co., Ltd.*, 54 Haw. 385, 395, 507 P.2d 1084, 1091 (1973).

## II.

The basic issue to be decided here is whether Lots 65, 59 and 60 comprise one parcel or tract of land. There is no question that Lot 59 adjoins both Lot 60 and Lot 65, and the three lots could comprise one tract of land.

Also, the pertinent portion of HRS § 101-23 reads:

If the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned

by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed, . . . .

Our statute is an enactment of the common law rule established by courts of other jurisdictions and it is recognized as the general law on that subject. *Sharp* v. *United States,* 191 U.S. 341, 354 (1903) ; *Barnes* v. *N.C. State Highway Commission,* 250 N.C. 378, 383, 109 S.E. 2d 219, 224 (1959) ; *City of Menlo Park* v. *Artino,* 151 Cal. App. 2d 261, 269-70, 311 P.2d 135, 141 (1957) .

Under such rule, the test generally used by courts to determine whether a parcel to be acquired by eminent domain proceeding is a part of a larger tract of land to entitle owners to severance damages is that there must be unity of title, physical unity and unity of use of the parcel taken and parcel left. *City of Menlo Park* v. *Artino, supra; Barnes* v. *N.C. State Highway Comm'n, supra,* 4A *Nichols on Eminent Domain,* §§ 14.3, 14.31 (3rd ed. 1971) . We believe that the test adopted by other courts . is fair and reasonable and should be followed by this court.

The owners established by uncontradicted testimony that in September 1968 they consolidated Lots 57 and 58 into Lot 65 for the purpose of constructing a condominium apartment building; that on December 24, 1968, they filed an application for a building permit for the construction of such building; that they also filed an application to register the condominium project with the Real Estate Commission of the State of Hawaii and preliminary approval was awaiting the issuance of the building permit; that necessary financial arrangement for both interim and permanent loans had been made and commitment had been imminent when condemnation proceeding was initiated; and that but for the eminent domain proceeding the condominium project would have been consummated.

The owners also contended and attempted to show that expenses incurred by them for the condominium project had enhanced the value of Lot 65.[1] The trial judge, pursuant to this theory advanced by the owners, permitted them to introduce evidence, by way of testimony and exhibits, to show that the total sum of $77,764.97 had been incurred on the condominium project for architectural fees, mortgage broker's fees, attorney's fees, project coordinator's salary, etc.

Wong, one of the owners, also testified that the architectural firm of Anbe, Aruga and Associates, Inc., had been retained to draw plans for the construction of another condominium apartment building on Lots 59 and 60; and that the owners had been billed $4,650 for such plans.

Also upon the request of the owners, the trial judge instructed the jury as follows:

> In determining the just compensation to be paid for Lots 65, 59 and 60, you may not award expenses paid or incurred prior to the date of summons simply as expenses but may only consider them if they enhanced the fair market value of the land as of the date of summons.

Also, there is nothing in the record to show that the owners at anytime had abandoned the condominium project on Lot 65.

---

[1] After the City rested, counsel for the owners in his opening statement stated that Wong, one of the owners,

"will basically show you that, as landowners, from the time they purchased it to this date, they took all the necessary actions to put a project together and only by the filing of the condemnation suit were they prevented from doing this.

You will recall that Mr. Hulten awarded — in his judgment, put no value for any expenses whatsoever that the owners had incurred but he agreed that if reasonable expenses were incurred, paid or incurred, in putting the property towards a proper project, that the landowners are entitled to recover these; so Mr. Wong will give you some testimony, showing what they did in trying to build on the property until they found out that they couldn't, and we believe that these are proper expenses that enhanced the value of the property and that the owners are entitled to them."

It is clear to us that the owners not only by choice and design had separated the use of Lot 65 from Lots 59 and 60, but also based on the use for which they had committed Lot 65 for a condominium apartment building, attempted to show that the value of the lot had been enhanced by the expenses incurred by them for the project. We believe that this factor is controlling here on the question whether Lots 65, 59 and 60 constituted one tract of land.[2] The owners having thus separated the use of Lot 65 from other lots, it could no longer be said that there was such "connection, or relation of adaptation, convenience, and actual and permanent use between them, as to make the enjoyment of the parcel taken, reasonably and substantially necessary to the enjoyment of the parcel left, in the most advantageous and profitable manner in the business for which it is used." *Peck* v. *Superior Short Line Ry. Co.,* 36 Minn. 343, 345, 31 N.W. 217, 218 (1887). *See also, Barnes* v. *N.C. State Highway Commission,* 250 N.C. 378, 109 S.E.2d 219 (1959); *City of Menlo Park* v. *Artino,* 151 Cal. App.2d 261, 311 P.2d 135 (1957).

There is no question as to the unity of title and physical unity of the three lots. However, we do not agree with the owners that these factors make Lot 65 part and parcel of a larger tract of land comprising Lots 59, 60 and 65 as they contend. Here, as pointed out above, the uncontradicted evidence is that Lot 65 had been committed by the owners for a condominium apartment building independent and separate from Lots 59 and 60. Thus, under the record of this case, we hold that as a matter of law Lot 65 was a separate and independent

---

[2]The owners on one hand claim that having committed Lot 65 for a condominium project and having incurred expenses which had enhanced the value they are entitled to damages for Lot 65 on such enhanced value; then on the other hand, they claim that Lot 65 was a portion of a larger tract of land, comprising of Lots 59, 60 and 65 and the larger tract of land is more valuable than separate Lot 65 and Lots 59 and 60 and that they are also entitled to severance damages. It would appear to us that they are claiming more for Lot 65 under two conflicting theories and as the proverbial saying goes, "The owners cannot eat their cake and have it, too."

lot and not a part of a larger tract or parcel of land. In other words, Lot 65 was a separate and distinct lot from Lots 59 and 60. *Sharp* v. *United States,* 191 U.S. 341, 356 (1903) .[3]

Therefore, the owners were not entitled to severance damages and also, the trial judge erred in permitting the appraiser as an expert witness for the owners to evaluate Lots 65, 59 and 60 as comprising one parcel or tract of land.

Reversed and remanded for retrial according to the mandate contained herein.

*George Hieda,* Deputy Corporation Counsel (*Paul Devens,* Corporation Counsel, with him on the briefs) , for plaintiff-appellant.

*Ted Gamble Clause* (*Daniel H. Case and Bruce G. Jackson* with him on the brief, *Bortz, Case, Stack, Kay, Cronin & Clause* of counsel) for defendants-appellees *Joe Lynn Hayes, Frank Edmond Nyman, Charles Warren Tryck, James Wah You Wong.*

---

CONCURRING AND DISSENTING OPINION OF RICHARDSON, C.J., WITH WHOM MARUMOTO, J., JOINS

I respectfully dissent from the majority opinion as it concerns the rate of interest to which the condemnees are entitled for blight of summons damages.

The majority relies on *City and County of Honolulu* v. *Bonded Investment Co., Ltd.,* 54 Haw. 385, 507 P.2d 1084 (1973) which allowed condemnees 5 per cent per annum as the proper or reasonable rate of interest to

---

[3]"There are here separate and distinct farms conducted under the circumstances detailed, and we cannot see that the owner of those separate farms not taken established any right of payment for damages to them arising from the use which the government intended to make of the land it took."

be utilized in computing blight of summons damages between the date of summons and the date of the order of possession.

The court in *Bonded Investment* premised its finding of the applicable interest rate on an interpretation of legislative intent with which I cannot agree. Essentially, the court said that because the legislature provided a 5 per cent figure as the rate of interest allowed from the date of the order of possession until the final payment, there is a strong indication that 5 per cent should also be awarded condemnees from the time of summons until the order for possession. The court acknowledged that the legislature had not spoken directly on this issue.

In light of the necessity of awarding condemnees reasonable and just compensation for damages suffered from the date of summons, *City and County of Honolulu* v. *Lord,* 36 Haw. 348 (1943) ; *In re Campbell's Estate,* 46 Haw. 475, 382 P.2d 920 (1963) ; and in view of the legislative silence on this point, I am constrained to disagree with the 5 per cent figure.

In *State* v. *Coney,* 45 Haw. 650, 372 P.2d 348 (1968) this court indicated that the goal of providing just compensation is best approached by awarding condemnees interest at the "normal commercial rate" prevailing in this state. A workable definition of this crucial phrase was attempted in *Lehigh Valley Trust Co.* v. *Pennsylvania Turnpike Commission,* 401 Pa. 135, 141, 163 A.2d 86, 89 (1960) . The court stated that the normal commercial rate is the rate of interest charged by lenders to the average, normal borrower whose credit is not "prime" or unquestionable.

In *United States* v. *100 Acres of Land,* 468 F.2d 1261, 1269 (9th Cir. 1972) the Court stated that "interest, at a proper and reasonable rate, is an element of just compensation *to be determined in the judicial process"* (emphasis supplied) . The Court also decided that the proper rate of interest is a "factual question and should

be determined by the trier of fact." I agree with both of the above propositions.

Thus, the precise figure should be a factual matter varying from case to case depending upon evidence adduced at trial pertaining to the rate of interest which institutional lenders of this state would charge.

I would reverse on the rate of interest.