375 P.3d 250

**COUNTY OF KAUAʻI, Plaintiff–Appellee,**

**v.**

**HANALEI RIVER HOLDINGS LIMITED, a Cook Islands corporation; Michael Guard Sheehan; Patricia Wilcox Sheehan, as Trustee of that certain unrecorded Revocable Trust Agreement of Patricia Wilcox Sheehan, dated December 21, 1994; Patricia Wilcox Sheehan; Gaylord H. Wilcox; Daniel H. Case; Grove Farm Company, Inc., a Hawaii corporation; Hugh W. Klebahn; Donn A. Carswell; Pamela W. Dohrman; Robert D. Mullins; William D. Pratt; Randolph G. Moore; and the Heirs and/or Assigns of**

---

John B. Brosseau, also known as John Brosseau, John B. Brasseau and J.B. Brasseau; John Does 1–200; Doe Partnerships 1–25; Doe Corporations 1–25; Doe Entities 1–25; and Doe Governmental Units 1–25, Defendants–Appellants.

No. CAAP–14–0000828.

Intermediate Court of Appeals of Hawai'i.

March 31, 2016.

Richard E. Wilson, Honolulu, on the briefs, for Defendants–Appellants.

Mauna Kea Trask, (Office of the County Attorney), Rosemary T. Fazio, James K. Mee, (Ashford & Wriston), Honolulu, on the briefs, for Plaintiff–Appellee.

FOLEY, Presiding Judge, LEONARD and GINOZA, JJ.

Opinion of the Court by GINOZA, J.

This case involves Plaintiff–Appellee County of Kaua'i's (County) exercise of eminent domain to take private land in which the Defendants–Appellants Hanalei River Holdings, Ltd., (HRH) and Michael Sheehan (Sheehan) (collectively, the Sheehan Defendants) owned an interest. The Sheehan Defendants appeal from a "Final Judgment As To All Claims and All Parties" (Judgment) entered April 25, 2014, in the Circuit Court of the Fifth Circuit (circuit court).[1]

On appeal, the Sheehan Defendants contend the circuit court erred by (1) granting the County's motion to withdraw a portion of estimated just compensation that had been deposited with the circuit court; (2) granting the County's motion for summary judgment on the issue of severance damages; and (3) adopting the County's calculation for blight of summons damages.

For the reasons stated below, we vacate the circuit court's award for blight of summons damages and remand on that issue. In all other respects, we affirm.

## I. Background

On May 31, 2011, the County filed a Complaint against Sheehan asserting its exercise of eminent domain to take private land for a public use, specifically to expand a public park located in Hanalei commonly known as Black Pot Beach Park. The private land at issue consists of three parcels, referred to in this case as Parcel 33 (TMK No. (4) 5–5–01–033), Parcel 34 (TMK No. (4) 5–5–01–034), and Parcel 49 (TMK No. (4) 5–5–01–049) (collectively referred to as the Subject Properties). Subsequently, the County filed a First Amended Complaint adding defendants, including HRH and Patricia Wilcox Sheehan, individually and as Trustee of that certain unrecorded Revocable Trust Agree-

---

1. The Honorable Kathleen N.A. Watanabe presided, except as noted.

ment of Patricia Wilcox Sheehan, dated December 21, 1994 (Patricia Sheehan).[2]

On April 30, 2012, the County filed an ex parte motion for an order putting it in possession of the Subject Properties. In an attached affidavit, Wallace G. Rezentes, Jr., Director of Finance of the County of Kaua'i, stated that the County had deposited with the chief clerk of the circuit court the amount of estimated just compensation for the taking of the real property, $5.89 million, as required under Hawaii Revised Statutes (HRS) §§ 101–29 and –30 (2012).

On May 4, 2012, the circuit court entered the requested ex parte order of possession in favor of the County.[3]

On June 29, 2012, Patricia Sheehan filed an answer to the First Amended Complaint and asserted that she, both individually and as trustee, "is the owner of the fee simple interests, easements, rights of way or the express contingent remainder man [sic], to all or portions of the real property [Parcels 33, 34, and 49.]" Further, Patricia Sheehan requested that the circuit court decide the respective interests of all named defendants and that the court "determine and award the just compensation, including but not limited to blight of summons, to which Patricia W. Sheehan is entitled by virtue of the taking, and severance damages to the remaining property."

On August 16, 2012, HRH filed an answer in which it admitted it has right, title, and interest in the subject parcels. HRH also filed a "Motion to Vacate Ex Parte Order Putting Plaintiff in Possession" in which it argued, *inter alia*, that the appraisal used as a basis for the estimate of just compensation was seven months stale on the date of summons (the valuation date pursuant to HRS § 101–24 (2012)), thus "[i]t was stale as a matter of law and did not in good faith represent the reasonable fair market value of the property." At the hearing on the motion, HRH argued that the primary defect in the appraisal was that it did not value purported improvements made to the lots. On September 13, 2012, the court entered an order denying HRH's motion to vacate the order of possession.

On September 25, 2012, Sheehan filed an answer and admitted that "some of the identified individuals and/or entities have right, title and interest in the subject parcels[.]"

On March 11, 2013, the Sheehan Defendants filed an application for payment of the estimated compensation, requesting that the clerk of the court remit the entire deposit of estimated compensation ($5.89 million), minus the required taxes, penalties and interest, pursuant to HRS § 101–31 (2012). On March 19, 2013, Patricia Sheehan filed a statement of no position regarding the Sheehan Defendants' application for payment of estimated compensation. However, Patricia requested that her attorneys have an opportunity to review any order entered in relation to the application.

On April 2, 2013, the County filed an opposition to the disbursement of the estimated compensation asserting, *inter alia*, that it was unresolved how the Sheehan Defendants would apportion the payment between the Subject Properties given that Sheehan owned Parcel 49, HRH owned Parcels 33 and 34, and the interests of Patricia Sheehan remained to be adjudicated. The County also noted that title to the Subject Properties was clouded as to exactly what interest each of the three defendants had in the properties because the tax map of the Subject Properties reflected a subdivision that was never completed. The County also contended that, in the event the jury awarded compensation in a manner different than the allocation made by the defendants, it "would have no reliable means of recouping any excess payment" because, for example, if HRH, a Cook

---

**2.** Patricia Sheehan takes no part in this appeal. In its First Amended Complaint, the County also added the following defendants who it asserted may have an interest in the Subject Properties: Gaylord H. Wilcox; Daniel H. Case; Grove Farm Company, Inc., a Hawai'i corporation; Hugh W. Klebahn; Donn A. Carswell; Pamela W. Dohrman; Robert D. Mullins; William D. Pratt; Randolph G. Moore; the Heirs and/or Assigns of John B. Brosseau, also known as John Brosseau, John B. Brasseau and J.B. Brasseau; and various Does. None of these parties take part in this appeal.

**3.** The Honorable Randal G.B. Valenciano entered this order.

Islands corporation, withdrew the estimated just compensation and it was later determined HRH was not entitled to that amount, the County would be forced to seek reimbursement from a foreign corporation with potentially no other assets in Hawai'i.

On the same day, April 2, 2013, the County also filed a motion to withdraw $1.03 million of the estimated just compensation on deposit with the court, contending it was entitled to adjust its estimate based on an updated appraisal of the Subject Properties that valued the properties at $4.86 million. The County asserted that its initial deposit was based on an appraisal conducted in anticipation of condemnation litigation, but, once the Complaint was filed, it obtained an updated appraisal by the same appraiser based on the applicable valuation date, May 31, 2011, the date of summons.

On April 5, 2013, Patricia Sheehan filed a waiver and release of all proceeds payable by the County in the proceedings and expressed her consent to disbursement of the proceeds to the Sheehan Defendants.

On the same day, April 5, 2013, the Sheehan Defendants filed a reply in support of their application for payment of the estimated compensation in which they asserted that none of the County's objections prevented payment. The Sheehan Defendants asserted *inter alia* that (1) Patricia Sheehan's interests were now resolved; (2) the appraisal valued each parcel separately, so the money could be easily apportioned; and (3) whether HRH is a foreign corporation is irrelevant as the governing statutes do not differentiate between a local and a foreign owner.

On April 10, 2013, the County and Sheehan executed an Agreement Regarding Withdrawal of Deposit, which allowed the Sheehan Defendants partial payment of the deposit, in the amount of $4.86 million less unpaid property taxes (a total of $4,538,018.10), apportioned as follows: Parcel 33—$1,627,295.03; Parcel 34—$2,294,407.11; and Parcel 49—$616,315.96.[4] Further, as part of the agreement, Sheehan agreed to indem-

nify the County if HRH failed to repay any money that exceeded the jury verdict on Parcels 33 and 34. The parties filed a stipulation on April 10, 2013 and an amended stipulation on April 18, 2013, providing for partial payment of the deposit to the Sheehan Defendants in the amounts set forth in the agreement.

On April 22, 2013, the Sheehan Defendants filed an opposition to the County's motion to withdraw $1.03 million of the estimated just compensation, generally challenging the existence of any authority permitting the County to revise its estimated compensation, especially after it seized the property and the Sheehan Defendants had applied for the release of the funds.

On May 13, 2013, the circuit court granted the County's motion to withdraw $1.03 million of the deposit.

On August 13, 2013, the County filed a motion for partial summary judgment on the issue of severance damages for an area of land referred to in the Sheehan Defendants' appraisal as "Area 51." The parties agree that "Area 51" is not owned by the Sheehan Defendants. Instead, it appears to be part of a lot owned by Patricia Sheehan, Lot 127, which abuts Parcel 34, and is an area over which Sheehan had an easement to operate a boat baseyard, to the extent the baseyard was permitted by the County.

On October 3, 2013, the circuit court filed an order granting the County's motion for partial summary judgment, ruling that the Sheehan Defendants were not entitled to severance damages. The circuit court concluded *inter alia* that there were no genuine issues of material fact and that the Sheehan Defendants could not satisfy the unities test under *City & County of Honolulu v. Bonded Investment Co., Ltd.,* 54 Haw. 523, 525, 511 P.2d 163, 165 (1973) [hereafter *Bonded Inv. II* ]. Specifically, the court concluded that there was no unity of title because HRH owned Parcels 33 and 34, Sheehan owned Parcel 49, and Patricia Sheehan owned "Area

---

4. The agreement also provided that, in the event the circuit court denied the County's pending motion to withdraw $1.03 million from the deposit and allowed further payment to the Shee-

han Defendants, said payment would be allocated between the parcels according to the ratios used in the agreement.

51." Moreover, the court concluded there was no physical unity because "Area 51" did not abut the only property owned by Sheehan, Parcel 49. Alternatively, the circuit court also determined that an easement is not title to land, and that the Sheehan Defendants were estopped from claiming severance damages because they had failed to disclose the claim in any pleading or during discovery.

On November 8, 2013, after a jury trial, the jury returned a Special Verdict Form, finding that the total fair market value of the three parcels on May 31, 2011, was $5.8 million, broken down as follows: Parcel 33 (owned by HRH)—$2.03 million; Parcel 34 (owned by HRH)—$3.016 million; and Parcel 49 (owned by Sheehan)—$754,000.

On November 18, 2013, the County filed a motion regarding blight of summons damages (an amount paid to a land owner as a result of the government's delay in paying full just compensation for the condemned property on the date of summons). The County contended that the Sheehan Defendants were entitled to blight of summons damages (5% per annum interest) during two periods: (1) from May 31, 2011 (the date of summons) until May 4, 2012 (the date the County asserted it made its initial deposit)[5] on the full $5.8 million jury verdict; and (2) from April 29, 2013 (erroneously stated as the date the court granted the County's motion to withdraw a portion of the deposit)[6] until the date the County paid the Sheehan Defendants in full, on the $940,000 difference between the $4.86 million already received by the Sheehan Defendants and the $5.8 million jury verdict.[7]

On January 16, 2014, the circuit court granted the County's motion regarding blight of summons damages and adopted the County's calculation of damages. On January 24, 2014, the Sheehan Defendants filed a motion for reconsideration of the blight of summons order. The circuit court thereafter denied the motion for reconsideration.

On April 25, 2014, the circuit court entered the Judgment and a Final Order of Condemnation. The Sheehan Defendants timely appealed.

## II. Standards of Review

### A. Withdrawal of a Portion of the Estimated Just Compensation

■ We consider applicable Hawai'i statutes in determining whether the circuit court was authorized to allow the County to withdraw part of the estimated just compensation deposited with the court.

Statutory interpretation is reviewed *de novo* by [an appellate] court. "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *Taylor–Rice v. State*, 105 Hawai'i 104, 108, 94 P.3d 695 [659], 663 (2004) (citations omitted). Moreover, "it is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Instead, our sole duty is to give effect to the statute's plain and obvious meaning." *T–Mobile USA, Inc. v. Cty. of Hawai'i Planning Comm'n.*, 106 Hawai'i 343, 352–53, 104 P.3d 930, 939–40 (2005) (citation omitted).

---

5. It appears from the record that the County may have made its deposit of $5.89 million to the court on April 30, 2012. However, none of the parties challenge the May 4, 2012 date as the date of deposit and we will thus treat that date as the date of deposit for purposes of this appeal.

6. The circuit court entered its order allowing the County to withdraw a portion of the deposit on May 13, 2013, not April 29, 2013. Nonetheless, as discussed in section III.C. below, April 10, 2013 (the date the parties executed the Agreement Regarding Withdrawal of Deposit) is the triggering date for the second period for blight of

summons damages under the facts of this case and the issues raised on appeal.

7. The Sheehan Defendants' position on calculating blight of summons damages changed during the course of the proceedings before the circuit court. Ultimately, they argued that the County should pay: 5% interest per annum on the entire jury verdict between May 31, 2011 (date of summons), and April 10, 2013 (the date the parties executed the Agreement Regarding Withdrawal of Deposit); and 5% interest per annum on the $940,000 from April 10, 2013, until the County paid in full.

*Bhakta v. County of Maui*, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005) (some citations and brackets omitted). "[E]minent domain statutes are to be construed liberally in favor of the landowner." *County of Hawai'i v. C & J Coupe Family Ltd. P'ship*, 119 Hawai'i 352, 366, 198 P.3d 615, 629 (2008).

██ Given our conclusion, *infra*, that the circuit court had the authority to allow the County to withdraw a part of the deposit, we review the circuit court's exercise of that authority for abuse of discretion. *See United States v. 1,997.66 Acres of Land, More or Less, in Polk County, Iowa*, 137 F.2d 8, 13–14 (8th Cir.1943).

## B. Summary Judgment on Severance Damages

██ We review the circuit court's grant or denial of summary judgment *de novo*. The standard for granting a motion for summary judgment is settled:

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party. In other words, we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion.

*Stanford Carr Dev. Corp. v. Unity House, Inc.*, 111 Hawai'i 286, 295, 141 P.3d 459, 468 (2006) (citations and brackets omitted).

## C. Blight of Summons Damages

██ An award of blight of summons damages is reviewed under the abuse of discretion standard. *Hous. Fin. & Dev. Corp. v. Ferguson*, 91 Hawai'i 81, 92, 979 P.2d 1107, 1118 (1999).

## III. Discussion

## A. County's Withdrawal of a Portion of the Estimated Just Compensation

The Sheehan Defendants contend that the circuit court erred by granting the County's motion to withdraw a portion of the estimated just compensation that had been deposited with the court, specifically $1.03 million of the $5.89 million that the County had deposited with the clerk of the circuit court.

██ The Sheehan Defendants contend that the circuit court's actions should be reviewed under the abuse of discretion standard, and that there is no legal authority that permits the County to withdraw a portion of the estimated just compensation that was deposited pursuant to HRS § 101–29 after the County has taken possession of the land and the condemnee has petitioned the court for release of the funds pursuant to HRS § 101–31. The Sheehan Defendants argue that the County should be estopped from reducing the amount of estimated just compensation in this case because the Sheehan Defendants relied on the estimate in petitioning the court for release and, in doing so, waived all defenses to the condemnation action besides an assertion of greater compensation or damages.[8]

██ The County responds that its decision to withdraw a portion of the estimated just compensation cannot be reviewed by a court because the County has the right to adjust its estimate. The County further asserts that the Sheehan Defendants were not harmed by the reduction of the estimated just compensation because the County was

---

8. The Sheehan Defendants also assert that they were further deprived of the use of the withdrawn $1.03 million for four months and potentially could have garnered more than a 5% per annum return on the funds. We note that before the circuit court, the Sheehan Defendants only challenged the authority of the County to withdraw a portion of the estimate, and did not argue that they could earn more of a return. Arguments not raised below are waived. *County of Hawaii v. UNIDEV, LLC*, 129 Hawai'i 378, 387, 301 P.3d 588, 597 (2013) ("It is axiomatic that where a party fails to raise an argument before the courts below, that argument may be deemed waived for purposes of appeal.").

required to cover the difference between the amount initially paid to the Sheehan Defendants and the jury verdict, plus the statutory 5% interest per annum on the difference, thus the Sheehan Defendants have received just compensation.

We disagree with the County's contention that its decision to withdraw a portion of the estimated just compensation on deposit with the court is not subject to judicial review. The County moved for withdrawal under HRS §§ 101–29 and 101–31. Thus, there is a question of statutory interpretation whether the circuit court, with whom the money was deposited, was authorized to permit the withdrawal.

To evaluate this issue, we must consider pertinent sections of HRS Chapter 101. HRS § 101–29 provides in pertinent part:

§ 101–29 **Possession pending action; alternative procedure.** Where the plaintiff is the State or any county, the following alternative procedure may be followed. At any time after the commencement of an action pursuant to this part, the State or any county may file a motion for an order of possession invoking this section and supported by an affidavit alleging, or by oral evidence prima facie showing:

. . . .

(3) The sum of money estimated by the State or county to be just compensation or damages for the taking of the real property.

Upon such motion and upon payment of such estimated sum of money to the clerk of the court for the use of the persons entitled thereto, the court shall issue an order ex parte putting the State or county in possession of the real property sought to be condemned. . . . The order placing the State or county in possession shall become effective upon the expiration of ten days after service thereof; provided that for good cause shown within the ten days, the court may vacate or modify the order or postpone the effective date thereof for an additional period of time.

(Emphasis added.) In turn, HRS § 101–30 provides in pertinent part:

§ 101–30 **Order of possession.** No order of possession shall issue unless the plaintiff has paid to the clerk of the court issuing the order, for the use of the persons entitled thereto, the amount of the estimated compensation or damages stated in the motion for the issuance of the order and, in the case of a plaintiff other than the State or a county, has so paid such additional amount, or furnished such additional security, as may be required by the court.

(Emphasis added.) HRS § 101–31 provides in pertinent part:

§ 101–31 **Payment of estimated compensation; effect thereof.** Upon the application of the parties entitled thereto the court may order that the amount of the estimated compensation or damages stated in the motion and paid to the clerk of the court, or any part thereof, be paid forthwith for or on account of the just compensation to be awarded in the proceedings. . . . A payment to any party as aforesaid shall be held to constitute an abandonment by the party of all defenses interposed by the party, excepting the party's claim for greater compensation or damages. If the compensation or damages finally awarded in respect of the land or any parcel thereof exceeds the amount of the money so received by any person entitled, the court shall enter judgment for the amount of the deficiency. The unexpended moneys and any additional security so deposited with the clerk of the court shall be available for, or for enforcement of, the payment of any final judgment awarded by the court.

(Emphasis added.) We also note that HRS § 101–24 provides in pertinent part that "[f]or the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of summons, and, except as provided in section 46–6, its actual value at that date shall be the measure of valuation of all property to be condemned[.]" (Emphasis added.)

The plain language of HRS § 101–31 authorizes the circuit court to order the amount of estimated compensation "or any part thereof" to be paid forthwith upon applica-

tion of the party entitled to the compensation. Thus, there is clear statutory authority that the court is not required to order payment of the entire amount deposited. The issue here is whether the circuit court could permit the County to withdraw a portion of the deposit. The circuit court granted the County's motion to withdraw based on HRS § 101–29, *City & County of Honolulu v. Bonded Investment Co., Ltd.*, 54 Haw. 385, 507 P.2d 1084 (1973) [hereafter *Bonded Inv. I* ], and federal case law.

The plain language of HRS §§ 101–29 through –31 does not expressly authorize withdrawal of a portion of estimated just compensation deposited in support of a motion for possession. HRS § 101–29 provides that the State or any county may file a motion for possession of private property supported by evidence showing the amount of estimated just compensation or damages for the taking of the property. It is only upon payment to the court of "such estimated sum of money[,]" or "the amount of the estimated compensation or damages stated in the motion for the issuance of the order[,]" for the use of the persons entitled thereto, that the circuit court can issue the order of possession. HRS §§ 101–29, –30. Further, HRS § 101–31 authorizes the court to disburse "the amount of the estimated compensation or damages stated in the motion and paid to the clerk of the court, or any part thereof," upon application by the parties entitled to the money. These provisions do not authorize the court to allow withdrawal of a portion of estimated just compensation.

However, while not cited by the circuit court as a basis for granting the County's motion to withdraw a portion of the deposit, HRS § 101–19 (2012) provides the court in an eminent domain action with broad authority to permit amendments to the proceeding.

§ 101–19 **Amendments of complaints, citations.** In all proceedings under this part the court shall have power at any stage of the proceeding to allow amendments in form or substance in any complaint, citation, summons, process, answer,

motion, order, verdict, judgment, or other proceeding, including amendment in the description of the lands sought to be condemned, whenever the amendment will not impair the substantial rights of any party in interest.

(Emphasis added.) Thus, relevant to this case, HRS § 101–19 authorized the circuit court to allow amendments "in form or substance" of processes, motions, or other proceedings,[9] as long as "the amendment will not impair the substantial rights of any party in interest."

In addition to the express statutory authorization in HRS § 101–19, the analysis in *Bonded Inv. I* also provides some guidance. In *Bonded Inv. I*, the jury verdict in an eminent domain case was less than the estimated just compensation that had been deposited and paid to the property owner, and the trial court allowed the property owner to retain the excess amount that had been paid, in disregard of the jury verdict. 54 Haw. at 387–88, 507 P.2d at 1087. The Hawai'i Supreme Court held that the City and County of Honolulu was entitled to restitution of the total excess deposit, plus 5% per annum, from the date of withdrawal of the excess deposit. *Id.* at 395, 507 P.2d at 1091. The court noted that "an 'estimate of just compensation and damages' is just that—an estimate. It was not intended in any manner to be dispositive, final or binding as a settlement on the amount due." *Id.* at 394, 507 P.2d at 1091.

In reaching its decision, the *Bonded Inv. I* court cited favorably to federal case law and construction of the Federal Declaration of Taking Act, 40 U.S.C. § 3114 (2012), which, the court noted, had a similar purpose to HRS Chapter 101. 54 Haw. at 393–94, 507 P.2d at 1090. Following that example, we look to *1,997.66 Acres of Land*, in which the Eighth Circuit Court of Appeals held that

> there is nothing in the Declaration of Taking Act, inconsistent with an exercise of the implied, inherent authority of the district court to allow the United States to amend the declaration of taking filed in a

---

**9.** "[T]he estimate [of just compensation] is not part of the pleadings. It is part of a separate procedure under HRS [§ ]101–29 for immediate

possession of the condemned property." *Bonded Inv. I*, 54 Haw. at 395, 507 P.2d at 1091.

condemnation proceeding, for the purpose of reducing (or increasing) an erroneous estimate of just compensation for the land taken, and to permit the Government to withdraw the excess of the cash deposited over the revised estimate. This construction merely seeks, by reasonable and sound implication, to give practical effect to the fundamental purposes and policies of the Act, on a point on which the Act itself is silent, in a manner that does no violence to the basic or substantive rights that are involved in the proceeding.

137 F.2d at 13 (footnote omitted);[10] *see also, Bishop v. United States,* 288 F.2d 525, 529 (5th Cir.1961) (citing *1,997.66 Acres of Land*) (noting that the government may reduce the deposit before it has been withdrawn by the property owner). The Eighth Circuit noted that "[t]he two principal purposes of Congress, in making provision in the Declaration of Taking Act for the estimating of just compensation and the depositing of the amount thereof in court, undoubtedly were to minimize the interest burden of the Government in a condemnation proceeding, and to alleviate the temporary hardship to the landowner and the occupant from the immediate taking and deprivation of possession." 137 F.2d at 11. However, the court also stated that permitting the landowner to acquire the excessive initial estimate "would not tend to serve the general aim and policy of the [Federal Declaration of Taking Act]" and would "leave open the possibility of a waste of public funds[.]" *Id.* at 12. The Eighth Circuit also held that the court could refuse to permit the government to revise its estimate and withdraw a portion of the deposit if the deposit was already paid out to the landown-

er, or if the government was not acting in good faith. *Id.* at 14.

■ Based on HRS § 101–19 and persuasive federal case law, we hold that the court in an eminent domain proceeding may permit a governmental entity to withdraw a portion of the estimated just compensation deposit that has not been dispersed to the landowner when the governmental entity, acting in good faith, seeks to adjust the estimate to accurately reflect the value of the property on the date of summons and the adjustment will not impair the substantial rights of any party in interest. Given this standard, we review the circuit court's decision to allow the withdrawal of $1.03 million in this case for abuse of discretion. *See 1,997.66 Acres of Land,* 137 F.2d at 13–14 (applying an abuse of discretion standard in reviewing the trial court's refusal to allow a governmental entity to revise its compensation estimate and to withdraw the deposit excess).

■ In this case, the estimated just compensation had not been dispersed to the Sheehan Defendants at the time the County moved to revise its estimate and withdraw a portion of the deposit. Also, the County appears to have acted in good faith. Pursuant to HRS § 101–24, the County was required to pay the "actual value" of the Subject Properties on the date of summons "[f]or the purpose of assessing compensation and damages[.]" It appears from the record that the County sought to adjust its estimate and withdraw a portion of the deposited just compensation based on an updated appraisal that reflected the value of the Subject Properties at the date of summons (May 31, 2011). The

**10.** In a footnote, the Eighth Circuit Court of Appeals discussed a District of Columbia statute containing language substantially similar to HRS § 101–19, and noted that the statute was a codification of inherent judicial power:

In a corresponding declaration of taking statute applicable to the District of Columbia, Act of March 1, 1929, c. 416, 45 Stat. 1415, 40 U.S.C.A. § 361 et seq., there is a provision, 45 Stat. 1421, 40 U.S.C.A. § 383, that 'In all proceedings under this chapter the court shall have power at any stage of the proceeding to allow amendments in form or substance in any petition, citation, summons, process, answer, declaration of taking, order, verdict, or other

proceeding, including amendment in the description of the lands sought to be condemned, whenever such amendment will not impair the substantial rights of any party in interest.' This is, of course, a mere legislative declaration of existent, inherent judicial power, but the inclusion of a declaration of taking in its terms in [sic] confirmatory that Congress did not intend that the mere filing of a declaration of taking in a condemnation proceeding should result in the creation of such a fixed or unvariable status with respect to the estimate and deposit that there could be no correction of an error which had occurred in them.

*1,997.66 Acres of Land,* 137 F.2d at 13 n. 1 (emphasis added).

**482**

initial estimate of $5.89 million was based on an appraisal of the value of the Subject Properties seven months before the date of summons, and therefore did not reflect the date upon which the Sheehan Defendants' right to compensation accrued. HRS § 101–24. In fact, HRH had previously requested that the circuit court vacate the order of possession *inter alia* on the grounds that the $5.89 million figure was seven months stale and did not accurately reflect the value of the Subject Property on the date of summons.

The County's withdrawal of a portion of the estimated just compensation did not impair the substantial rights of the Sheehan Defendants. First, under HRS § 101–31, the circuit court is authorized to disperse only a part of the estimated just compensation "stated in the motion and paid to the clerk of the court[.]" Second, it is only once payment of "the amount of the estimated compensation or damages stated in the motion and paid to the clerk of the court, or any part thereof" is made to the entitled party that the party abandons all defenses except claims for greater compensation or damages. HRS § 101–31. The Sheehan Defendants accepted payment of the reduced amount of estimated just compensation ($4.86 million) pursuant to agreement after the County had moved to withdraw a portion of the deposit. Therefore, the Sheehan Defendants did not rely on the original deposit in accepting payment. Third, although the property owner in an eminent domain proceeding is entitled to just compensation for the taking of private property for public use, the Hawai'i Supreme Court has noted that "to award [the condemnee] more than [the] value [of the property] would be unjust to the public." *Bonded Inv. I*, 54 Haw. at 394, 507 P.2d at 1091 (quoting *Garrow v. United States*, 131 F.2d 724, 726 (5th Cir.1942)). So long as the Sheehan Defendants receive proper blight of summons damages, the calculation of which is based in part on the estimated amount they initially received, they will have received just compensation. In short, the Sheehan

Defendants will receive full market value of the property as determined by a jury, plus appropriate interest. An award of additional sums at this stage in the proceedings would be inappropriate.[11]

The supreme court has noted that "[w]here the circuit court's decision is correct, its conclusion will not be disturbed on the ground that it gave the wrong reason for its ruling. An appellate court may affirm a judgment of the lower court on any ground in the record that supports affirmance." *Poe v. Hawai'i Labor Relations Bd.*, 87 Hawai'i 191, 197, 953 P.2d 569, 575 (1998) (citation and quotation marks omitted). Under HRS §§ 101–19 and 101–31, the circuit court had authority to disperse only part of the estimated just compensation to the Sheehan Defendants and to grant the County's motion to withdraw a portion of the estimated just compensation that had been deposited with the court. Further, given the circumstances of this case, the circuit court did not abuse its discretion in allowing the County to withdraw $1.03 million of the amount deposited with the court.

### B. Severance Damages

The Sheehan Defendants contend that Sheehan[12] is entitled to "severance damages" because the taking of the Subject Properties damaged the value of Sheehan's interest in the purportedly adjacent "Area 51." They assert that the circuit court erred in granting the County's motion for partial summary judgment on the issue of severance damages because there is a genuine issue of material fact whether Sheehan is entitled to such damages and he was not estopped from asserting a claim. The County moved for summary judgment on the severance issue after receiving a Summary Appraisal Report from the Sheehan Defendants that in part estimated damages to "Area 51" caused by the taking of the Subject Properties.

---

**11.** We note that the Sheehan Defendants do not request any form of relief from the circuit court's order permitting the County to withdraw a portion of the deposit, besides a request for us to vacate that order.

**12.** The Sheehan Defendants only assert that Sheehan is entitled to severance damages, not HRH.

HRS § 101–23 (2012) sets out the statutory right to severance damages, stating in pertinent part:

> If the property sought to be condemned constitutes only a portion of a larger tract, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvements in the manner proposed by the plaintiff shall also be assessed, and also how much the portion not sought to be condemned will be specifically benefited, if at all, by the construction of the improvement proposed by the plaintiff. If the benefit shall be equal to the amount of compensation assessed for the property taken, and for damages by reason of its severance from another portion of the same tract, then the owner shall be allowed no compensation, but if the benefits shall be less than the amount so assessed as damages or compensation, then the former shall be deducted from the latter and the remainder shall be the amount awarded as compensation or damages.

"[T]he test generally used by courts to determine whether a parcel to be acquired by eminent domain proceeding is a part of a larger tract of land to entitle owners to severance damages is that there must be <u>unity of title, physical unity and unity of use of the parcel taken and parcel left</u>." *Bonded Inv. II*, 54 Haw. at 525, 511 P.2d at 165 (emphasis added).

The parties do not dispute that Sheehan has a purported easement on "Area 51" to operate a boat baseyard (to the extent permitted by the County) and that "Area 51" is part of Lot 127, owned by Patricia Sheehan. In support of its motion for partial summary judgment, the County submitted the Sheehan Defendants' answers to interrogatories in which they acknowledge the ownership of the respective Parcels; that is, that Sheehan owns Parcel 49 and HRH owns Parcels 33 and 34. Thus, it is undisputed that, of the three parcels taken by the County, only Par-

cel 49 was owned by Sheehan. In support of its motion for partial summary judgment, the County also submitted, *inter alia*, maps from the Sheehan Defendants' appraisal, showing the relative location of the Subject Properties and "Area 51," which reveal that Parcel 49 does not abut "Area 51." Thus, the only condemned parcel owned by Sheehan, Parcel 49, is not adjacent to "Area 51," because Parcels 33 and 34, both owned by HRH, lie in between. Sheehan therefore cannot satisfy the physical unity requirement.[13] Based on this evidence, the burden shifted to the Sheehan Defendants to demonstrate a genuine issue of material fact. *See Stanford Carr Dev.*, 111 Hawaiʻi at 295–96, 141 P.3d at 468–69 (explaining the burdens on moving and non-moving parties on summary judgment).

In an attempt to raise a genuine issue of material fact, the Sheehan Defendants only submitted Sheehan's *unsigned* declaration[14] which states that (1) Sheehan's boatyard is situated on Parcels 33, 34, 49, 50, and "Area 51"; (2) his easement over "Area 51" remains in full force and effect as Patricia Sheehan had not cancelled it; and (3) he considered all of the lots part of the larger boatyard. Sheehan's unsigned declaration does not constitute admissible evidence under Rule 56(e) of the Hawaiʻi Rules of Civil Procedure (HRCP) because it violates Rule 7(g) of the Rules of the Circuit Courts setting forth the requirements for when a declaration may be submitted in lieu of an affidavit. In any event, even if Sheehan's declaration were considered, it does not raise a genuine issue of material fact whether he could satisfy the unities test.

Finally, we reject Sheehan's argument that under *Bonded Inv. II* there is no requirement that all of the pertinent lots abut one another. This is a clear misreading of *Bonded Inv. II* as the Hawaiʻi Supreme Court expressly noted that of the three parcels at issue in that case (which all satisfied the unity of title requirement), two were contiguous, and one of the two contiguous parcels adjoined the third, thus all three could com-

13. We make no comment on whether an easement constitutes title for purposes of the unities test.

14. Sheehan did not file a signed version of the declaration until approximately five months after the circuit court issued its order granting the County's motion for partial summary judgment.

prise one tract of land. 54 Haw. at 524, 527, 511 P.2d at 164, 166.

There is no genuine issue of material fact that Sheehan cannot satisfy the unities test for severance damages for "Area 51." We need not reach any other basis relied upon by the circuit court in granting summary judgment on severance damages.

## C. Blight of Summons Damages (Conditional Deposit)

The Sheehan Defendants contend that the circuit court abused its discretion by granting the County's motion regarding blight of summons damages and adopting the County's proposed method of calculation. Specifically, the Sheehan Defendants contend that the County's deposit of estimated just compensation was *conditional* and therefore did not stop interest from accruing on the amount that would be owed, until monies were paid to the Sheehan Defendants.

 "[B]light of summons damages' [is] a term which in general means the indemnification due a condemnee for the damages resulting from the government's delay in paying the full cash equivalent of the property taken on the date of summons." *City & County of Honolulu v. Market Place, Ltd.*, 55 Haw. 226, 235, 517 P.2d 7, 15 (1973). Blight of summons damages are essentially a rate of "interest" to provide the condemnee with full just compensation. *County of Hawaii v. C & J Coupe Family Ltd. P'ship*, 124 Hawai'i 281, 290 n.11, 242 P.3d 1136, 1145 n. 11 (2010).

In a case like this, where the County has obtained an order of possession for the property during the course of the condemnation proceedings, HRS § 101–33 (2012) provides the relevant statutory authority regarding blight of summons damages. HRS § 101–33 states, in pertinent part:

**§ 101–33 Allowance of interest, etc.** If an order is made letting the plaintiff into possession as provided for in sections 101–28, 101–29, and 101–32, the final judgment shall include, as part of the just compensation and damages awarded, interest at the rate provided in section 101–25 from the date of the order until paid by the plaintiff; provided that except in the case of an appeal by the plaintiff as provided in section 101–32, interest shall not be allowed upon any sum paid by the plaintiff to the clerk of the court from the date of the payment.

(Emphasis added.)

 Based on our reading of HRS § 101–33 and relevant Hawai'i case law, in a case like this, there are generally two periods relevant for blight of summons damages when the estimated deposit is less than the eventual final award. First, for the period between the date of summons and the date of an unconditional deposit of estimated just compensation, the party entitled to compensation is entitled to interest at 5% per annum on the amount of the final award of just compensation. *Market Place*, 55 Haw. at 235–37, 517 P.2d at 15–17; *Bonded Inv. I*, 54 Haw. at 396–97, 507 P.2d at 1092.[15] Second, from the date of an unconditional deposit of estimated just compensation until final payment, interest accrues at 5% per annum on the "amount by which the final award of just compensation exceeds the deposit of estimated just compensation upon which the order of possession was based," *Market Place*, 55 Haw. at 235, 517 P.2d at 15. However, it is only if the deposit of estimated just compensation is "truly unconditional" that it will "stop the running of interest as blight of summons damages on [the] amount of the deposit." *Id.* at 239, 517 P.2d at 17.

In this case, the circuit court ordered the County to pay blight of summons damages for two periods: first, from May 31, 2011

---

**15.** Although *Market Place* and *Bonded Inv. I* refer to the first period as between the date of summons and the *date of order of possession*, *Market Place* establishes, consistent with HRS § 101–33, that:

[T]here is no obligation on the part of the condemnor to pay interest to the extent that it makes an unconditional deposit of estimated just compensation with the clerk of the court. The City and County made such a deposit on May 28, 1970, and that is the date on which the trial court should have stopped the running of interest on the deposited sum as non-statutory blight of summons damages.

55 Haw. at 237, 517 P.2d at 16–17 (emphasis added).

(date of summons) until May 4, 2012 (date of deposit for estimated compensation), 5% per annum on the jury's final award of $5.8 million; second, from April 29, 2013 (purported date of the order permitting the County to withdraw a portion of the deposit) until the date the County paid in full, 5% per annum on the $940,000 difference between the amount initially paid to the Sheehan Defendants ($4.86 million) and the jury award ($5.8 million). The circuit court ordered no interest be paid on any amount during the period of May 4, 2012, through April 29, 2013, presumably because during this time, the deposit exceeded the eventual jury verdict.

The only issue related to the blight of summons damages that has been raised in this appeal is whether the County's deposit of estimated just compensation was conditional, such that the deposit did not stop interest from accruing.[16] The Sheehan Defendants contend that the circuit court erred in ruling that the County's deposit was unconditional, because the County opposed the Sheehan Defendants' request to release the $5.89 million on deposit with the court. The Sheehan Defendants thus contend that blight of summons damages (5% per annum interest) should run: on the entire jury award from May 11, 2011 (date of summons) to April 10, 2013 (the date of the Agreement Regarding Withdrawal of Deposit), *despite the County's deposit of estimated just compensation almost a year earlier on May 4, 2012;* and thereafter, continue to run on the $940,000 difference between the jury award and the $4.86 million initially paid, from April 10, 2013 until paid in full.

Thus, there are two issues that we must address: (1) whether the circuit court abused its discretion in ruling that the County's deposit of $5.89 million in estimated just compensation was unconditional; and (2) if the County's deposit was conditional, what effect that has on the calculation for blight of summons damages.

Regarding the first question whether the deposit was conditional, unlike in *Market Place,* there were no express conditions placed on the County's deposit of estimated just compensation at the time of deposit. Rather, the Sheehan Defendants contend that the deposit of $5.89 million became conditional because, when they applied for disbursement of the deposit in March 2013, the County opposed disbursement and only agreed to release of the money after Sheehan agreed to indemnify the County for any amount paid to HRH that exceeded the jury verdict. The County was concerned that because HRH was a Cook Islands entity, it would be difficult to obtain repayment from HRH if the ultimate jury award was less than the estimated deposit for the lots owned by HRH. The County thus wanted to ensure that it would receive repayment from HRH if the estimated deposit paid to HRH exceeded the jury verdict.

The Sheehan Defendants contend *Market Place* is on point and demonstrates that the County's deposit was conditional. In *Market Place,* the Hawaiʻi Supreme Court held that one of the City and County of Honolulu's deposits of estimated just compensation was conditional and therefore did not stop interest from accruing. The City, after originally depositing an unconditional amount of estimated just compensation and after a jury verdict was entered that was greater than the original deposit, deposited additional money in order to bring the amount deposited in line with the jury verdict. 55 Haw. at 229–30, 517 P.2d at 12. As part of its additional deposit, however, the City sought to attach certain conditions on the distribution of the money, namely that it would consent to distribution "provided that such order contain such protective measures to insure the return of any monies not lawfully due the distributees together with such additional interest, damages or charges for wrongful withdrawal of funds to which distributees may not be entitled.". *Id.* at 238, 517 P.2d at 17. As a result of the City's condition on distribution, there was a delay in release of

---

**16.** The Sheehan Defendants do not raise any argument that the blight of summons calculation should have been affected by the County's request or ultimate withdrawal of $1.03 million from the $5.89 million deposited with the circuit court. Thus, we need not address any issues related thereto.

the funds to the condemnees. *Id.* at 238–39, 517 P.2d at 17.

The supreme court held that by placing such restrictions on the disbursement of the additional deposit, the City's deposit was not unconditional, and interest could continue to accrue on the difference between the original unconditional deposit and the jury verdict. *Id.* at 240–41, 517 P.2d at 18–19. The supreme court noted that

> an initial deposit of estimated just compensation entitling the condemnor to an order of possession must be 'for the use of the persons entitled thereto' under HRS [§] 101–30. As this language suggests, only if such a payment is truly unconditional will it stop the running of interest as blight of summons damages on the amount of the deposit.

*Id.* at 239, 517 P.2d at 17 (emphasis added). The supreme court thus held that subsequent deposits must likewise "be unconditionally for the use of the persons entitled thereto, cf. HRS [§] 101–30, in order to escape interest charges under HRS [§] 101–33." *Id.* at 241, 517 P.2d at 19.

■ In this case, however, the County's opposition to releasing the estimated just compensation to the Sheehan Defendants was not solely based on implementation of "protective measures" meant to ensure repayment of excess funds to HRH. Importantly, one of the bases asserted by the County for opposing release of the money was that title to the Subject Properties was not clear, and indeed, the record establishes that title to the Subject Properties was still in dispute when the Sheehan Defendants filed their application for payment of the deposited funds. Pursuant to HRS § 101–31, only "the parties entitled thereto" may be paid the "amount of the estimated compensation or damages stated in the motion and paid to the clerk of the court, or any part thereof[.]" *See also Market Place*, 55 Haw. at 241, 517 P.2d at 19, ("[W]e hold that such money 'paid by the plaintiff to the clerk of the court' must be

unconditionally for the use of the persons entitled thereto." (Emphasis added.)).

■ In *Bonded Inv. I*, the Hawai'i Supreme Court quoted the following from *United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), as instructive in interpreting HRS Chapter 101 because the Federal Declaration of Taking Act has a similar purpose:

> The purpose of the statute is twofold. First, to give the Government immediate possession of the property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property.

*Bonded Inv. I*, 54 Haw. at 393–94, 507 P.2d at 1090 (emphasis added)(block format omitted)(quoting *Miller*, 317 U.S. at 381–82, 63 S.Ct. 276). Therefore, a party must be entitled to the just compensation in order to receive payment of the estimated amount deposited with the court. Requiring a party to demonstrate entitlement to the money does not constitute placing a condition upon the deposit.

In this case, the County objected on April 2, 2013 to the Sheehan Defendants' application for payment of the deposit. At that time, it was unclear if Patricia Sheehan held a compensable interest in the Subject Properties.[17] In her answer to the First Amended Complaint, Patricia Sheehan had asserted that she "is the owner of the fee simple interests, easements, rights of way or the express contingent remainder man [sic], to all or portions of the real property" and requested that the circuit court decide the respective interests of all named defendants and that the court "determine and award the just compensation, including but not limited to blight of summons, to which Patricia W. Sheehan is entitled by virtue of the taking, and severance damages to the remaining

17. By the time the Sheehan Defendants filed the application for payment of the deposit of estimated just compensation (March 11, 2013), all other defendants besides the Sheehan Defendants and

Patricia Sheehan had either disclaimed any interest in the Subject Properties, stipulated to dismiss all claims, or had default entered against them.

property." Without resolution of these issues, it was not clear which party was entitled to the just compensation.

It was not until April 5, 2013, that Patricia Sheehan waived her interest in the proceeds paid by the County on the Subject Properties. It was only at that date that it became clear that the Sheehan Defendants were the parties entitled to just compensation. Therefore, until April 5, 2013, any delay in the availability of deposited funds was not due to conditions placed by the County upon payment of the money.

■ However, the County did not drop its opposition to the payment of the estimated just compensation on April 5, 2013. Rather, the County consented to the release of the money five (5) days later, on April 10, 2013, only after the County and Sheehan reached the Agreement Regarding Withdrawal of Deposit, in which Sheehan *inter alia* agreed to indemnify the County for any amount paid to HRH that exceeded the jury verdict. The County's requirement of an assurance that it could recover any excess payment made to HRH further delayed payment to the Sheehan Defendants, and this constituted a condition placed upon the deposit of estimated just compensation.

The supreme court noted in *Market Place* that "[i]f a condemnor were free to withhold arbitrarily its consent to a distribution of an additional deposit of estimated just compensation, it is evident that the right to interest under HRS [§] 101–33 could be circumvented in substantial measure." 55 Haw. at 239, 517 P.2d at 18. This statement is equally applicable in this case to the initial deposit of estimated just compensation where the County, on the eve of distribution, required conditions be satisfied to merit the County's acquiescence to the payment. The County's position would, in effect, allow it to circumvent HRS §§ 101–29, 101–30, 101–31 and 101–33, by first depositing estimated just compensation to stop the running of interest on that amount, but then also conditioning access to that money by the "persons entitled thereto" on the acceptance of "protective measures." In addressing persons or parties entitled to just compensation, HRS §§ 101–29 through 101–31 do not distinguish between local and foreign owners, or owners whose financial situation may be conducive to difficult recovery of an overpayment. The County chose to pursue immediate possession, and such action requires the deposit of estimated just compensation that the "person entitled thereto" has the right to withdraw and use at once, if title is clear. *Market Place*, 55 Haw. at 239, 517 P.2d at 17; *Bonded Inv. I*, 54 Haw. at 393–94, 507 P.2d at 1090.

As of April 5, 2013, it was clear that the Sheehan Defendants were entitled to the estimated just compensation on deposit with the circuit court. Before that date, the question whether the deposit was conditional does not affect the calculation of blight of summons damages. However, the County's insistence that it receive protection against overpayment to HRH further delayed payment to the Sheehan Defendants for five days. Based on *Market Place*, blight of summons damages to the Sheehan Defendants should include, for the five days between April 5, 2013 (the date the record establishes the Sheehan Defendants as the parties entitled to just compensation) and April 10, 2013 (the date the parties agreed to initial payment of funds), 5% interest per annum on the entire $5.8 million jury verdict.

Moreover, from April 10, 2013, until the date the County paid in full, blight of summons damages should have included 5% interest per annum on $940,000 (the difference between the $5.8 million jury verdict and the $4.86 million initially paid). The circuit court incorrectly started this second period on April 29, 2013 (and not April 10, 2013). Thus, the Sheehan Defendants are also entitled to further blight of summons damages of 5% interest per annum on $940,000 for the period between April 10, 2013 and April 29, 2013.

## IV. Conclusion

Based on the above, the "Final Judgment As To All Claims and All Parties" entered on April 25, 2014, in the Circuit Court of the Fifth Circuit is affirmed, except with regard to the award of blight of summons damages. The award for blight of summons damages is

vacated, and this matter is remanded to the circuit court to recalculate blight of summons damages consistent with this opinion.