**\*\* FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER\*\***

**Electronically Filed
Supreme Court
SCAP-24-0000673
18-MAY-2026
10:37 AM
Dkt. 22 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

JK,
Appellant,

vs.

HK; NS; and CHILD SUPPORT ENFORCEMENT AGENCY,
STATE OF HAWAI'I,
Appellees.

_____

SCAP-24-0000673

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(CASE NO. 1FPA-24-0000203)

May 18, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ.,
AND CIRCUIT JUDGE MALINAO, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

This transfer case arises from a May 20, 2024 amended parentage petition, in which the Family Court of the First Circuit ("family court")[1] concluded in its November 20, 2024

---

[1] The Honorable Jessi L.K. Hall presided.

findings of fact ("FOFs") and conclusions of law ("COLs") that an unmarried woman without a biological connection to the child could not be a legal parent as a matter of law.

JK (pseudonym "Ava") and HK (pseudonym "Bailey"), both women, were in a long-term relationship and had a child together (pseudonym "Kai").  After Ava and Bailey separated, Bailey began restricting Ava's visitation with Kai.  Ava then filed this petition to establish legal parentage over Kai based on Hawai'i Revised Statutes ("HRS") § 584-4(a)(4) (2018), (the "holding out presumption") of paternity:

> HRS § 584-4 Presumption of paternity. (a) A man is presumed to be the natural father of a child if:
>
> . . . .
>
> (4) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child[.]

Although, on its face, HRS § 584-4(a) applies only to a male parent, in LC v. MG & Child Support Enf't Agency, 143 Hawai'i 302, 430 P.3d 400 (2018), this court discussed the interplay between the paternity presumptions of HRS § 584-4 (2018) and the gender neutrality provision of HRS § 584-21 (2018).  143 Hawai'i at 312, 430 P.3d at 410.  This court noted that despite the gender-specific language of HRS § 584-4, HRS § 584-21 requires that in actions "'to determine the existence or nonexistence of a mother and child relationship[, i]nsofar as practicable, the provisions of the [Uniform Parentage Act

2

("UPA"), HRS Chapter 584] applicable to the father and child relationship shall apply.'" Id. (cleaned up). Hence, this court held that "despite the gender-specific language [of the paternity presumptions] in HRS § 584-4(a), the presumptions of paternity equally apply in determining the existence or nonexistence of a mother-child relationship." Id.

The family court concluded LC did not apply here because LC involved the application of gender-neutral language required by the Marriage Equality Act ("MEA")[2] -- but Ava and Bailey had never been married and thus the MEA did not apply. Although the family court found that Ava had held herself out as Kai's parent, it concluded that, as a matter of law, Ava could not establish parentage through the holding out presumption.

We hold that the language and intent of the 1973 UPA, which governed at the time of the family court's ruling,[3] allowed a mother and child relationship to be established through the same methods applicable to the father and child relationship "insofar

---

[2]     The MEA, HRS § 572-1.8 (2018), provides as follows:

>       Interpretation of terminology to be gender-neutral. When necessary to implement the rights, benefits, protections, and responsibilities of spouses under the laws of this State, all gender-specific terminology, such as "husband", "wife", "widow", "widower", or similar terms, shall be construed in a gender-neutral manner. This interpretation shall apply to all sources of law, including statutes, administrative rules, court decisions, common law, or any other source of law.

[3]     The 1973 version of the UPA has been repealed by the 2017 version of the UPA in the new HRS Chapter 584A, effective January 1, 2026. See S.B. 1231, 33rd Leg., Reg. Sess. (2025).

as practicable." Just as it was practicable in LC to apply the marital presumption, it is practicable in Ava's situation to apply the holding out presumption. As the family court found that Ava brought Kai into her home and held Kai out as her own, she is presumed to be Kai's parent; furthermore, this presumption of parentage was not rebutted by clear and convincing evidence.

Hence, the family court erred by concluding Ava could not establish parentage as a matter of law. Accordingly, we vacate in part the family court's FOFs and COLs and remand to the family court for proceedings consistent with this opinion, establishing legal parentage for Ava and addressing Ava's custody and visitation requests.

## II. Background

### A. Factual background

Bailey and Ava, both women, were in a romantic relationship for more than twelve years. In 2021, they began planning to start a family, with Bailey agreeing to carry the child. They asked Ava's cousin (pseudonym "Connor"), to be their sperm donor, so that the child would be biologically connected to Ava. Connor understood that both Bailey and Ava would be the child's parents and that he was not to be a parent.

On December 13, 2022, Kai was born. Ava was present with Bailey at Kai's birth and was the first person to hold Kai.

Bailey and Ava chose Kai's name together, including a hyphenated last name containing both of their surnames. Ava was not listed on Kai's birth certificate and never formally adopted Kai.[4]

After Kai's birth, Ava, Bailey, and Kai lived together "as a family" in a townhome on O'ahu. Bailey was a stay-at-home mother and Ava worked to support the family. They taught Kai to call Ava "Dada." During this time, Bailey and Ava shared parenting responsibilities, such as changing diapers, waking up for nighttime feedings, and "doing tummy time." Ava was also listed as Kai's second parent with the pediatrician, was authorized to take Kai to medical appointments, and participated in decisions regarding Kai's medical care.

In October 2023, Bailey and Ava separated. After their separation, Bailey moved to Hawai'i Island with Kai. Despite Kai's relocation, Ava and Kai continued to bond; Ava would visit Kai on Hawai'i Island and Bailey would also bring Kai to O'ahu to see Ava, including for holidays.

In February 2024, Ava was diagnosed with a serious illness. The next month, Ava stopped working in order to undergo

---

[4]    This issue is not raised on appeal, but the family court also erroneously ruled that Ava could not adopt the child as a second parent unless Ava and Bailey were married. Contrary to the family court's ruling, at the time of the child's birth, HRS § 578-1 (2018) provided that "[a]ny proper adult person, not married . . . may petition the family court . . . for leave to adopt an individual toward whom the person or persons do not sustain the legal relationship of parent and child[.]" Pursuant to this provision, unmarried adults had been allowed to become a parent to a child who already had another parent.

treatment and moved into her mother's O'ahu home.  In April 2024, Bailey and Kai also briefly lived with Ava and her mother.  Shortly thereafter, Bailey moved into another home with her new partner, taking Kai with her.  Bailey then began restricting Ava's time with Kai, telling Ava that being Kai's "Dada" was "a privilege."

**B.   Family court proceedings**

**1.   Petition & preliminary proceedings**

On May 20, 2024, Ava filed an amended petition in family court, seeking to establish her legal parentage of Kai and requesting joint legal and physical custody.  Alternatively, she sought rights as a de facto parent.[5]

The family court declined to establish Ava's legal parentage.  It opined that Ava could not take advantage of the holding out presumption.  But the family court also determined Ava qualified as a de facto parent and granted her temporary visitation with Kai.

Bailey, however, did not follow the temporary visitation schedule or facilitate video calls between Ava and Kai as ordered by the family court.  Instead, in July or August 2024, Bailey moved to Indiana with Kai without obtaining the family

---

[5]    See A.A. v. B.B., 139 Hawai'i 102, 384 P.3d 878 (2016), which applied the "de facto custody" provision of HRS § 571-46(a)(2).  See also, Doe v. Doe, 116 Hawai'i 323, 331, 172 P.3d 1067, 1075 (2007), which mentions the common law "de facto parent" doctrine.

court's permission or informing Ava. Ava contacted the Honolulu Police Department ("HPD") to enforce the temporary visitation order, but HPD refused to assist because Ava did not have parental rights.

On August 12, 2024, Ava filed a motion for the immediate return of Kai to Hawai'i, to enforce the court's visitation orders, and for sanctions. Bailey did not appear at the August 29, 2024 hearing on Ava's motion and the parentage petition, and the family court entered default against Bailey. The family court then heard testimony from Ava, Ava's mother, and Connor. But it reiterated its ruling that Ava could not be deemed a legal parent of Kai.

### 2. Findings of fact and conclusions of law

On November 20, 2024, the family court issued its FOFs and COLs.[6] Relevant here, the family court concluded that under HRS Chapter 584, the 1973 version of the UPA in effect at the time, a parent and child relationship can only be established between a child and a woman if: (1) the woman is the child's natural

---

[6] The FOFs/COLs were filed after Ava appealed pursuant to Hawai'i Family Court Rule 52(a) (eff. 2022), which provides:

> In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law.

7

mother under HRS § 584-1; or (2) the woman was married to the child's natural mother at the time of the child's birth.

Regarding (2), the family court sought to distinguish LC, 143 Hawai'i 302, 430 P.3d 400. It concluded LC did not apply because that opinion involved the application of gender-neutral language as required by the MEA, and Ava and Bailey had never married. Although the family court also found that Ava held herself out as Kai's parent, it still concluded Ava could not be Kai's legal parent.

Based on its determination that Bailey was Kai's only legal parent, the family court concluded it was in Kai's best interest to primarily reside with Bailey in Indiana and denied Ava's request for an order requiring Bailey to move the child back to Hawai'i.

## C. Appellate proceedings

On appeal, Ava asserts the family court erred when it concluded she could not establish legal parentage under the 1973 UPA. Relevant here, Ava argues that the plain language of the 1973 UPA requires parentage presumptions to be read in a gender-neutral manner and, as the family court found she held the child out as her own, she is a presumptive parent, which has not been rebutted.

We granted Ava's request to transfer the appeal and ordered the Child Support Enforcement Agency ("CSEA"), a nominal

8

appellee, to file an answering brief.  See Hawai'i Rules of
Appellate Procedure ("HRAP") Rule 28(c) (eff. 2022) ("An
appellate court may require an answering brief" from a nominal
appellee if an answering brief "is deemed useful to [the
appellate court's] consideration.").

CSEA agrees with Ava's position that the holding out
presumption of parentage under the 1973 UPA must be read in a
gender-neutral manner.

### III.  Standards of Review

### A.  Statutory interpretation

"The interpretation of a statute is a question of law
reviewable de novo."  In re Doe, 95 Hawai'i 183, 190, 20 P.3d
616, 623 (2001) (citations and ellipses omitted).  We are guided
by the following principles:

> When construing a statute, our foremost obligation is to
> ascertain and give effect to the intention of the
> legislature, which is to be obtained primarily from the
> language contained in the statute itself.  And we must read
> statutory language in the context of the entire statute and
> construe it in a manner consistent with its purpose.

Id. at 191, 20 P.3d at 624 (cleaned up).

> It is a cardinal rule of statutory construction that courts
> are bound, if rational and practicable, to give effect to
> all parts of a statute, and that no clause, sentence, or
> word shall be construed as superfluous, void, or
> insignificant if a construction can be legitimately found
> which will give force to and preserve all the words of the
> statute.

Cnty. of Kaua'i v. Hanalei River Holdings, Ltd., 139 Hawai'i 511,
526, 394 P.3d 741, 756 (2017) (cleaned up).

**B.    Findings of fact and conclusions of law**

The family court's FOFs are reviewed under the "clearly erroneous" standard.  <u>Fisher v. Fisher</u>, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006).

> A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

<u>Id.</u>

"The family court's COLs are reviewed on appeal <u>de novo</u>, under the right/wrong standard."  <u>Id.</u> (cleaned up).

### IV.    Discussion

We agree with Ava that the family court erred when it ruled she could not be the child's parent as a matter of law because she is a woman who is neither married to Bailey nor is Kai's biological mother.  Instead, we hold that based on the family court's findings, Ava is a presumptive parent under the 1973 UPA's holding out presumption, and that this presumption has not been rebutted by clear and convincing evidence.

**A.    The holding out presumption applies**

The 1973 UPA provided that the parent and child relationship between a child and "[t]he natural mother may be established by proof of her having given birth to the child, <u>or under this chapter</u>[.]"  HRS § 584-3(1) (2018) (emphasis added).

10

This court addressed the application of paternity presumptions under HRS § 584-4(a) to same-gender couples in LC, 143 Hawai'i 302, 430 P.3d 400.  There, this court held the marital presumption of HRS § 584-4(a)(1), which presumes that a man is the "natural" father of a child when he and the child's mother are married to each other and the child is born during the marriage, also applies to same-gender married couples.  143 Hawai'i at 311-12, 430 P.3d at 409-10.  But our analysis was not limited to same-gender married couples, as misconstrued by the family court.

In LC, this court noted HRS § 584-21 provides that in actions "to determine the existence or nonexistence of a mother and child relationship, insofar as practicable, the provisions of the [UPA, HRS Chapter 584] applicable to the father and child relationship shall apply."  143 Hawai'i at 312, 430 P.3d at 410 (cleaned up).  Reading HRS §§ 584-4 and -21 together, this court concluded that "despite the gender-specific language in HRS § 584-4(a), the presumptions of paternity equally apply in determining the existence or nonexistence of a mother-child relationship."  Id.

This case concerns the holding out presumption of HRS § 584-4(a)(4): "A man is presumed to be the natural father of a child if[] . . . [w]hile the child is under the age of majority, he receives the child into his home and openly holds out the

11

child as his natural child[.]" The family court concluded LC did not apply because LC involved the application of gender-neutral language required by the MEA, Ava and Bailey had never been married, and thus the MEA did not apply. Although the family court found that Ava brought Kai into her home and held herself out as Kai's parent, it concluded Ava's parentage could not be established through the holding out presumption as a matter of law.

Despite the family court's attempt to distinguish LC, that case actually governs. LC's holding was not contingent on the MEA. This court did first note that "both the UPA and the MEA demonstrate that the UPA's marital presumption of paternity applies equally to both men and women." 143 Hawai'i at 304, 430 P.3d at 402. But this court also noted the family court had not even relied on the MEA. 143 Hawai'i at 308 n.7, 430 P.3d at 406 n.7. Rather, with respect to the UPA, this court applied the gender neutrality requirement of HRS § 584-21 to one of the paternity presumptions of HRS § 584-4(a) -- the marital presumption. 143 Hawai'i at 312, 430 P.3d at 410. This court then held that "the family court did not err in concluding that the UPA's marital presumption of parentage applie[d]." 143 Hawai'i at 320, 430 P.3d at 418 (emphasis added). Thus, in LC, the gender neutrality requirements of the UPA, not the MEA, were dispositive.

Further, in LC, this court noted that "legal parentage may arise even if there is no biological connection to the child." 143 Hawai'i at 311, 430 P.3d at 409.  HRS § 584-4(a) sets out six different ways in which a person is presumed to be the legal parent of a child.  Three of these, HRS § 584-4(a)(4)-(6), including the holding out presumption, are not dependent on marital status.[7]  Of these six different methods, only one, HRS §

---

[7]    HRS § 584-4(a) states "[a] man is presumed to be the natural father of a child if:"

> (1) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within three hundred days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a decree of separation is entered by a court;
> (2) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
>> (A) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within three hundred days after its termination by death, annulment, declaration of invalidity, or divorce; or
>> (B) If the attempted marriage is invalid without a court order, the child is born within three hundred days after the termination of cohabitation;
> (3) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:
>> (A) He has acknowledged his paternity of the child in writing filed with the department of health;
>> (B) With his consent, he is named as the child's father on the child's birth certificate; or
>> (C) He is obligated to support the child under a written voluntary promise or by court order;
> (4) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child;
>                                             (. . . continued)

584-4(a)(5), relies on genetics. Thus, the 1973 UPA clearly allowed for legal parentage to be established even if the individual seeking parentage has no biological connection with the child. See Inoue v. Inoue, 118 Hawai'i 86, 94, 185 P.3d 834, 842 (App. 2008) (holding plaintiff was child's legal father where he was not the biological father, but had established he was the presumptive parent under HRS § 584-4(a)(3) and (4)). Parentage can be established without a biological connection because the overarching purpose behind the 1973 UPA was to protect nonmarital children. See H. Stand. Comm. Rep. No. 190, in 1975 House Journal, at 1019.

Moreover, other states construing their versions of the 1973 UPA have also ruled that a non-biological or non-birth parent in a same-gender relationship can be recognized as a

---

(continued . . .)

　　　(5) Pursuant to section 584-11, he submits to court ordered genetic testing and the results, as stated in a report prepared by the testing laboratory, do not exclude the possibility of his paternity of the child; provided the testing used has a power of exclusion greater than 99.0 per cent and a minimum combined paternity index of five hundred to one; or

(6) A voluntary, written acknowledgment of paternity of the child signed by him under oath is filed with the department of health. The department of health shall prepare a new certificate of birth for the child in accordance with section 338-21. The voluntary acknowledgment of paternity by the presumed father filed with the department of health pursuant to this paragraph shall be the basis for establishing and enforcing a support obligation through a judicial proceeding.

Also, HRS § 584-2 (2018) provides that "[a]ny parent and child relationship established under this chapter extends to every such child and to every such parent, regardless of the marital status of the parents."

legal parent under the holding out presumption.[8]  Multiple states have also held that if their legislature intended to restrict parentage presumptions for "natural" mothers to birth or biological mothers, they would have done so.[9]

Recent Hawai'i legislative history reaffirms similar legislative intent.  In 2025, while this case was pending on appeal, the Hawai'i legislature adopted the 2017 version of the UPA effective January 1, 2026.  See S.B. 1231, 33rd Leg., Reg. Sess. (2025).  One of the primary goals was to "ensure[] the

---

[8]    See, e.g., Elisa B. v. Superior Court, 33 Cal.Rptr.3d 46, 53-58 (Cal. 2005) (ruling that the UPA's holding out provision applicable to determining a father and child relationship shall be used to determine a mother and child relationship); Chatterjee v. King, 280 P.3d 283, 287-89 (N.M. 2012) (ruling that the plain language of the 1973 UPA instructed them to recognize that the provisions relating to the father and child relationship also applies to the mother and child relationship); In re Parental Responsibilities of A.R.L., 318 P.3d 581, 586-88 (Colo. App. 2013) (ruling that the holding out presumption applies with equal force to women in a same-gender relationship seeking to demonstrate presumptive mother status); In re Guardianship of Madelyn B., 98 A.3d 494, 500-01 (N.H. 2014) (ruling "'paternity presumptions are driven, not by biological paternity, but by the state's interest in the welfare of the child and the integrity of the family.  The familial relationship between a nonbiological [parent] . . . resulting from years of living together in a purported parent/child relationship, is considerably more palpable than the biological relationship of actual paternity and should not be lightly dissolved.'" (internal citation omitted)); Partanen v. Gallagher, 59 N.E.3d 1133, 1139-43 (Mass. 2016) (ruling that the holding out presumption was gender-neutral, pointing favorably to other sister state court rulings that held presumed parentage was equally available to all individuals even in the absence of a biological relationship).

[9]    See, e.g, Chatterjee, 280 P.3d at 293 (holding "[t]he Legislature did not limit the analysis to the simple question of whether the woman is the 'birth mother.'  Had the Legislature intended to do so, [the UPA] would read only 'the natural mother may be established by proof of her having given birth to the child.'"); A.R.L., 318 P.3d at 586 (holding "the plain language of the UPA is gender-neutral and specifically allows the term 'father' and 'mother' to be used interchangeably, where practicable.  Had the legislature intended to limit parentage to one female and one male, it could have done so.  It did not.  We will not engraft such a limitation into the statute." (internal citations omitted)).

equal treatment of children born to same-gender couples[.]" S.B. 1231, at 1. The new UPA reiterates gender-neutral parental presumptions to ensure equal treatment of the children of same-gender couples. See Courtney G. Joslin, Preface to the UPA (2017), 52 Fam. L.Q. 437 (2018).

Despite adopting gender-specific language, the legislature had passed the 1973 UPA in 1975 to "provide substantive legal equality for all children regardless of the marital status of their parents." H. Stand. Comm. Rep. No. 190, in 1975 House Journal, at 1019. Under the 2017 UPA, parentage presumptions, including the holding out presumption, no longer use gendered language. See HRS § 584A-303(a)(2) (Supp. 2025). But the Preface to the UPA (2017) clearly indicates that all previous versions of the UPA, including the 1973 UPA, included language requiring gender-neutral application of parentage laws, like the language in HRS § 584-21:

> In addition to the constitutional mandate of equal protection, the terms of the UPA itself expressly mandate that gendered provisions be applied equally without regard to sex. Every iteration of the UPA includes a provision stating that provisions addressing the parentage of men must be applied equally to determine the parentage of women. Consistent with this statutory mandate, most courts applying earlier iterations of the UPA concluded that provisions for determining men's parentage -- including gendered provisions creating presumptions of paternity -- must be applied equally to determine maternity when it is at issue. For example, a number of courts have applied their state's gendered holding-out presumption equally to women.

Joslin, 52 Fam. L.Q. at 446-47 (footnotes omitted and emphasis added). Therefore, as reflected in HRS § 584-21, the

legislative intent of the 1973 UPA was to have paternity presumptions applied in a gender-neutral way.[10]  The 2017 UPA only clarified that previous paternity presumptions were equally available to all individuals.

Hence, even under the 1973 UPA, the paternity presumptions of HRS § 584-4(a) were to be applied in a gender-neutral manner and regardless of marital status and biological connection.[11]

## B.   The holding out presumption applied and has not been rebutted by clear and convincing evidence

As the family court found that Ava brought the child into her home and held Kai as her own, she is presumed to be a parent of the child pursuant to HRS § 584-4(a)(4); this presumption of parentage has not been rebutted by clear and convincing evidence.

---

[10]    Model UPA § 21 cmt. (1973) states:

> This Section permits the declaration of the mother and child relationship where that is in dispute.  Since it is not believed that cases of this nature will arise frequently, Sections 4 to 20 are written principally in terms of the ascertainment of paternity.  While it is obvious that certain provisions in these Sections would not apply in an action to establish the mother and child relationship, the Committee decided not to burden these -- already complex -- provisions with references to the ascertainment of maternity.  In any given case, a judge facing a claim for the determination of the mother and child relationship should have little difficulty deciding which portions of Sections 4 to 20 should be applied.

[11]    As the statute plainly and clearly dictates that paternity assumptions must apply to all individuals regardless of marital status or biological connection, we need not address equal protection and due process constitutional concerns of the family court's interpretation.

17

As this court noted in LC, HRS § 584-21 requires paternity presumptions to apply "insofar as practicable" to the mother and child relationship. 143 Hawaiʻi at 312, 430 P.3d at 410. Just as this court ruled in LC that it was practicable to apply the marital presumption to the mother and child relationship even where there was no biological connection, it is practicable to apply the holding out presumption here. Id.

The family court's findings satisfy the applicability of the HRS § 584-4(a)(4) holding out presumption. Ava received Kai into her home and openly held Kai out as her child. Ava acted as Kai's parent and provided Kai with food, shelter, education, and ordinary medical care. Therefore, the family court correctly found that Ava held the child out as her own. But, contrary to the family court's ruling, Ava is also entitled to the presumption under HRS § 584-4(a)(4). Further, no clear and convincing evidence has been presented rebutting this presumption. See HRS § 584-4(b) (2018).[12]

## V. Conclusion

Hence, the family court erred in concluding Ava could not establish parentage as a matter of law. We therefore (1) vacate the family court's November 20, 2024 FOFs and COLs in so far as it determined Ava could not be declared a legal parent; and (2)

---

[12]    HRS § 584-4(b) states that a presumption under HRS § 584-4 "may be rebutted in an appropriate action only by clear and convincing evidence."

remand to the family court for further proceedings consistent with this opinion, establishing Ava's parentage and also addressing Ava's custody and visitation requests.

| | |
|---|---|
| Emily M. Hills, | /s/ Vladimir P. Devens |
| Jongwook P. Kim, | |
| ACLU of Hawai'i | /s/ Sabrina S. McKenna |
| Makia Minerbi, | |
| Legal Aid Society of Hawai'i | /s/ Todd W. Eddins |
| for appellant JK | |
| | /s/ Lisa M. Ginoza |
| Mark T. Nugent | |
| Deputy Attorney General | /s/ Clarissa Y. Malinao |
| for appellee Child Support | |
| Enforcement Agency, | |
| State of Hawai'i | |

